Case number 243915 William Shears v. FirstEnergy Corporation et al. Oral argument not to exceed 15 minutes per side. Mr. Petrov you may proceed for the appellant. Good afternoon may it please the court my name is Dan Petrov I represent William Shears who goes by Bill Shears and we're here today to talk about another ADA case under some different circumstances arising out of employment and specifically the question that I'd like to focus on today is what we highlighted in the briefs the district courts what we believe is a district courts error regarding the inapplicability of McPherson which is the Sixth Circuit case regarding what an employer's obligation is when it is aware of a disability and an available accommodation with information that would be sufficient to provide the employee that accommodation but denies it and then terminates an employee for conduct relating to that disability. If we just take the first part of that one of the things that I think is is pretty interesting about this case is it seems pretty clear that he had a disability I don't think they object to that they knew that he had diabetes I don't think they objected that the plant supervisor was told that this night work was taking a toll on him they don't really argue about that what it comes down to that you don't really address I don't think so I want to give you a chance to do that is that his supervisor BN or whatever his name was says yes he had many conversations and in each instance he told him that the company policy was that to get an accommodation you have to have a doctor's note at no point can I find any place in the record that your client refutes that talks a lot about how he talked to him and the guy knew he had diabetes and he was struggling we get that but he doesn't seem to refute that he was told every time that he met with the supervisor that he had to have a note so is there any is that on refuted I don't think Mr. Shears disputes that he was told that our contention your honor would be that the law of the circuit in the land and the statute in the EEOC guidelines is that that once an employee puts an employer on notice that there is a medical condition and that there is some discussion that wants to that that should proceed that that triggers the employer's obligation to engage in an interactive process and that and he then did deliver it I think approximately seven days later on April 30 complain about failure to accommodate after he presented the note and they and they took him off night work they gave him what he wanted so you can only be complaining about what happened from the beginning of the night work up to the time that he presented the note right until I disagree with that because it because I believe that that first request does begin that process and the obligation but I asked you if there was any evidence that at that time when it started that contradicts the company's testimony that he was told he had to have a note and you said you don't think there was there isn't it not on that point no you're on okay so back to where we were then basically you you would say that it doesn't accord with the employer's responsibilities under the ADA to have a policy that says we're not just gonna take your word for it you got to have a note I don't there any case that says that an employer is wrong to do that no no and I'm not making that contention and to the extent I sound like I am I'd like to clarify that point I believe what makes this case particularly different than simply the standard failure to accommodate is that that that timeline then continues and it continues on until mr. Shears is termination at which point in time he is terminated allegedly on the we'll get to termination okay we're taking now failure to accommodate so if they if they told them that that you that you have to bring in a note he brings in a note and then they and then they accommodate him where is the ADA violation I okay I understand your your confusion let me I I would call the terminate I don't think I'm well I'm sorry I I mean well I know your honor I mean based upon my own inability to explain that point to you yet so let me get to that point I believe that the termination relying upon the time in which he had requested accommodation constitutes a failure to accommodate itself in other words while he was given he was moved to day shift on April 3rd after not making the claim that they failed to accommodate him by requiring him to bring in a note I'm not making the claim that the requirement to bring in a note is problematic okay so what happened before he brought in the note that's not a failure to accommodate what happened when he brought in the note that's not a failure to accommodate all this is really only relevant then to the termination I will agree with with your point with the footnote that that I would describe the termination as involving conduct before the note that that's that's my hesitation to agree fully so I agree with the process of him asking there was full notice of his disability there was a full notice to the employer given that that that he has diabetes it's causing problems on night shift and I need to have changes to my schedule made because it's causing me cognitive impairments and functioning they asked for the note he provides the note he's input on day shift showing that that accommodation is possible and available and not an undue burden to the employer so we're all good to there that the termination which then relies upon timesheets from that period of time that your honor highlighted after the request but before the note at which time the employer was on notice that there was an accommodation issue that my contention is that relying upon that time frame and the timesheets that occurred within that time frame constitutes a failure to accommodate why does that theory depend on the view that the falsification of the timesheets rested on his disability or his disability caused the falsification I'm not sure that I follow your so I think your theory is the termination relying on the falsification of timesheets is a part of the failure to accommodate because the falsification arose from the fact that he was working second shift and maybe out of it and so that and his disability explains the falsification yes but the I guess that that would be a factual question about whether the disability and I think your client quite clearly admitted in his deposition that he had no evidence or proof that his medical condition had caused the falsification so I think we have to take that as a one disputed fact I think when he I think the death deposition testimony was and I read it this morning he said I can't prove that my he said I can't prove as a medical matter of medical certainty that my timesheets were erroneous because of my disability in part because the defendant would not deliver the timesheets to him so he was questioned without the evidence in front of him but he did say this happened at a time if there are errors when I told you that I was having cognitive functioning problems and it was because of my disability and so it's your question about here we are reviewing a summary judgment grant a grant where there were factual questions both about whether there were timesheet errors in the first place which is separate and apart from the disability claim but also in addition to whether there were timesheet errors which I believe is a is a jury question but second if there were it's also a factual question for the jury to determine whether those if those timesheet errors were a product of his disabling condition which is saying it's a jury question whether there were errors whether whether 16 out of 21 or 21 out of 26 whatever it was whether that actually it happened in fact I yes because the beyonds testimony was that he does not know what time mr. Shears actually arrived on premises there is that there are two fences on the property there's an outer fence and an inner fence and the time card is for the inner fence but mr. Shears is proximity on the property work is not measured by those time card entries some of the timesheet errors were understating mr. Shears his time worked in other words he undercharged himself so to the extent that there were errors it's unclear as to what those correspond to and also whether they are sufficient to warrant termination given mr. Clark's testimony that there are other individuals had timesheet errors and were not terminated so all of these I believe go to the question of whether the stated reason is pretextual whether there is sufficient evidence for a jury to conclude that the termination was based at least in part upon the medical condition that was known to the defendants I read this to say that your client didn't dispute that the underlying badge data showed discrepancies we do not dispute that there are discrepancies as to when he entered what's called the protected area but he worked in the protected area even if he spent some time outside of the protected area where he actually physically did the his job was in the protected area right or the most part testimony was that he did have some work responsibilities outside but yes the majority of his time outside were all like administrative type that's correct when you have to go to HR and those kinds of things that's true right yes so that sounds kind of de minimis to me no perhaps I don't I don't think that that's determinative though to the point the question of whether whether after having been informed that the disability was the basis for the conduct if we that the errors were true and that they did exist on that point I guess I I've gotten a little confused here I look at my confusion okay I thought that the accommodation that your client wanted was to be taken off of the night shift and he was taken off the night yes but I hear you saying today that the accommodation maybe wasn't that but the accommodation was actually to allow for the fact that he may have had these mistakes on his time cards and not to I believe those are two different ways of describing the same request in my in my view and the way that mr. Shears experienced it was that he had a discussion with his employer asking for an interactive process he didn't use these terms of course but asking for an engaging process to talk about his health and how he can continue his 29 year career that had up to this point in time had no errors and no problems at all after putting the employer on notice in March of 2019 that he had this medical condition and it was causing these problems they then asked for a medical note which he provided and there's no question at that point in time that the decision-makers were aware of what mr. Shears his medical needs were and admit that he was able to perform the job on a qualified basis with this accommodation that was available to then take the same period of time and terminate him for conduct that they of which they were aware at the time was had a good faith basis to assume it was based on medical needs we believe is a violation of the ADA I thought judge Davis asked you a really straightforward and very good question and that is are you claiming that they failed to accommodate him when they fired him for timesheet errors because they didn't take into account that you say they were caused by his condition so in other words putting now in my words they should have accommodated him by overlooking or excusing the timesheet errors yes is that the failure to accommodate that yes I do believe that is a requirement and you have so so in essence it's saying misbehavior can be excused by the underlying medical condition and do you have a case that comes anywhere near that that would be helpful to us yes your honor so we cited in the reply brief the McPherson case which is a education case not an employment case but there's also the case Equal Employment Opportunity Commission v. Dolgen Corp. which comes out of the Sixth Circuit 2018 is a case in which a diabetic employee was working in a retail location and there was a no eating and drinking policy while the person was on the floor McPherson says that you can't take action against an employee because of a disability they didn't take action here because of a disability they took action here because falsified his timesheets now your argument is it's one in the same but that's not what McPherson says McPherson says failure to consider the possibility of reasonable accommodation for disabilities if it leads to discharge for performance inadequacies resulting from the disabilities amounts to a discharge solely because of the disabilities and it just to finish the point that you had asked the this retail case Dolgen Corp. involved an employee who was taking orange juice from a cooler drinking it on the floor of work to avoid diabetic shock in violation of the policy of the no grazing no eating and drinking policy and that was held by this court to be an acceptable accommodation and a termination based the term the employee was terminated for drinking orange juice on the floor of the shop and that was held to be an impermissible termination because the violation of that policy relating to the disability was appropriate under the ADA is our decision in Martin which was three years after McPherson does that corroborate or confirm your understanding of McPherson or my understanding of McPherson I don't know but I'll be happy to look and talk about it on my rebuttal thank you okay thank you thank you counsel you'll have your full rebuttal thank you may it please the court my name is Karen and I'll be and I represent the Pele it's Energy Harbor Nuclear Corp successor to the first energy parties that are listed in the caption just to start out by addressing the accommodation issue specifically the interactive process issue unless the disability is obvious a mobility impairment a visual impairment a hearing impairment the interactive process permits an employer to require medical evidence of both the existence of the disability as well as the proposed accommodation that's not that's not what you so the district court rejected the failure to accommodate claim on the ground that no request for an accommodation was ever made before April 3rd before the doctor's note so why is the why is it seems like this is a shifting basis for rejecting the failure to accommodate claim to say that no it was made but the response of get a doctor's note suffice to satisfy that interactive process and I've that is correct that once the even did you even argue the interactive process in your appellees brief I suppose I have that's the one problem I have with this theory is that it seems to have not been the basis for the district courts decision and not been briefed on appeal explicitly I don't believe that the court spoke of the interactive process issue but it did the district it never needed to reach it because it said there was no accommodation request until the April 3rd doctor's note and that seems to be what you're defending on appeal and it just seems to me there's a dispute of fact from his own from Sears his own testimony that he did enough to request an accommodation and I'm not I don't know that I agree with that necessarily he talked about mr. shears talked about it's it's killing me I hate this I can't do the night shift not unusual necessary complaints during an outage but I think the failure to accommodate claim rests on the fact that as soon as he mr. shearer submitted the medical documentation where it's undisputed he had been told that repeatedly the accommodation was made we've never made first energies never made the undue burden argument as soon as people they were presented with the evidence they made that accommodation they had made it before sounds like he's not even disputing though but I could could have seen a theory what if his health had deteriorated deteriorated during the two weeks and so he was seeking damages for the harms to his health for the refusal to give him an accommodation during those two weeks that would have seemingly been a failure to accommodate theory that could have relied solely on the delay in the accommodation but perhaps he has it now abandoned that argument I'm not sure that that theory is in play at this point I think certainly if he was seeking the day I'm sorry I think that's what mr. Petroff said he wasn't mm-hmm I agree I think that you know just to speak to judge Murphy's point you know if we were looking at the you know the three weeks where he you know was still on the night shift prior to submitting the note again I think that comes down to the interactive process issue that the burden had been put on him as it should be to submit the medical evidence and so for those three weeks that he was not accommodated that's not something that the company is responsible for what mr. Petroff is arguing is that that three-week period which includes some of the allegedly false timesheet entries it can be and is explained by his disability and regardless of whether he had sought an accommodation during that period he's offering that as an excuse to the improper timesheet so what's the matter with that argument I think the matter what the matter is with that argument is there's no evidence about that we have mr. Shear saying no evidence that was in front of the company at the time the doctor's note says it can impair and infect his judgment that was the one received after he was terminated the the April 3rd note says please print but excuse him for three days I think it was and then place him on night shifts until we can get his you're saying that they had to present evidence during the discussion phase about his termination where he was given an opportunity to explain and and he didn't is that what you're saying I think if he had because he did not say during the those three weeks this is causing me to engage in you know falsification interact or even at best inaccurate timekeeping we might be having a different conversation but that was it's not raised serious by saying he should have said during that period and and it's causing me to cheat on my timesheets during this well I think that seems to be the natural outcome of the that the company should have assumed that there was some that his health was such that he was going to be engaging in this behavior or other behavior that would have caused his termination during those three weeks he complained you know it's disrupting my sleep etc etc assume that he didn't know during that time that it was causing this confusion with his church because there hadn't been any there hadn't been any audit of the time at that time correct yes so after the timesheets were audited and he has given the opportunity that when they lay it out for him on the spreadsheet and say look at all of these discrepancies if he had said at that time you know I told you I was having issues with my diabetes and it does definitely cause me confusion and I think that that's what led to that would that have been enough during the term like during the point where they were in the investigatory meeting or yes before the decision was made to terminate him but after he was presented with this information I think that would have been certainly part of the fact-finding that the company would have done I'm not sure it would have made a difference at the end of the day this is a nuclear environment which you know there is case law that's you know there were other things that would have happened if he had correct correct but if he had said during that meeting which he did not I can explain you know I'm having these difficulties this is most likely an outcome of my diabetic condition I think the company would have taken that into consideration interesting enough he's almost saying if he had made that argument this is a nuclear power plant you're you're redoing the nuclear core or whatever it was if if this condition was causing him to screw up his timesheets what impact was it having on him doing his job I would think your argument would then be wasn't he wasn't qualified and certainly and I'll do a comedy yeah and mr. beyond I believe testified to say if he had come to me at any point and said I am NOT you know I'm disoriented I'm confused I'm not sure I'm doing things correctly the NRC regulations require that there would have been a fitness for duty referral at that point well he's steadfastly maintained that he was qualified to do his job certainly in terms of technical qualifications I'm sorry I'm just pointing out the incongruity of say of his steadfastly maintained mm-hmm he was qualified to do his job which he required this required show under the ADA but he wasn't capable of adequately filling out his timesheets and I think that that kind of discrepancy or disconnect I think makes his argument here not really I think an appropriate one I mean if he was so impaired during the outage period where he couldn't accurately record time which is a swipe and an entering to have him handling it and I he was an instrument controls tech supervisor so you know to have him handling things that were going to be of importance during an outage and the subsequent operation of the nuclear power plant I think that's a conclusion I don't know that anybody really wants to come to but you know and I think mr. BN was correct when he said if I had seen any evidence of disorientation of not doing his job of failing to do his job falling asleep but whatever it was NRC requirements require me to make that referral so that an independent basis can independent inquiry can be made to sure that he can safely and effectively perform those crucial safety tasks that are required and in fact part of the investigation process was a review by what's called the safety conscious work environment review team if we're talking about pronunciations of things that squirt for anyone interested that they would review that is there anything in this process whether it had to do at the not that would require us to go back and review things redo things whatever it is and so I think that kind of backdrop of the nuclear power plant the NRC regulations and this idea that if I was so impaired I can't accurately record my time I think is as you said judgment key kind of renders the the qualified claim saying they did a retrospective examination of the work that he did during this period that he said he had this disability that had to be accommodated and they didn't find any deficiencies in his job performance well that wasn't necessarily the review the subject of the squirt review that would have been you know we've had this claim that falsification of timesheets inaccurate recording of information you know it does that implicate a safety requirement or a safety procedure I don't know and there's nothing in the after mr. shears his termination the relevance of this squirt review oh I think it's part of the one part of the process and to you know it shows that you know again there's this disconnect between the sheer mr. shears his claim that he was qualified to do his job knew how to do his job and that but suddenly this one smart part of his job the recording of time accurately was suddenly so impaired by his medical condition and I think another important fact is that during the time where they sat with him and said you know we've discovered these discrepancies which a response he really made no claim about his medical condition he may I believe he may have said that well maybe it had something to do with it but nothing definitive and you know at the point in terms of the information they had his shifting explanations you know first he denied then he said well maybe it's because of this or maybe I should can just pay it back again you know doesn't have anything to do necessarily with the accommodation issue or his medical condition but so setting aside whether they are mental defect actually caused the timesheet error there is the argument that you didn't there's at least some evidence of specific a few other individuals who were confronted with timesheet errors and allowed to fix it that's one theory of pretext perhaps and I think that his boss testified to somebody else who was allowed to fix it who apologized and I think that in the record it wasn't certainly to the extent that mr. shears had falsified I believe there was a one of the human resources professionals said let's make sure this isn't an honest mistake and I don't know that there's anything specific in the record about that the comparables in terms of was it one time two times I'm how many hours were actually erroneously calculated would be the distinction what about so you did say that that other individual apologized why wasn't why wasn't the suggestion that he would pay the money back kind of analogous to an apology well I don't know that the apology from the proposed comparable was dispositive in any way I think mr. shears is by the time he got to the offer to repay which I don't know that the company really even would have required that if there was some you know honest mistake in this I don't know that they the fact that one apologized and mr. shears offered to repay again is a distinction is a something that makes a difference in light of the significant amount of discrepancies that mr. shears was engaging in and I would note attached to mr. Behan's affidavit in the motion for summary judgment is this is the the chart that he had prepared while he was investigating and it does show several days before the outage where mr. shears was not on the night shift which and granted he may have had some responsibilities outside the protected area but there's discrepancies in those days as well so it's not as you know and again I think it just it really goes to what the company was looking at and what they were faced with in terms of an employee who was showed to have committed significant time time card you know at best mistakes or at worst fraud and in a you know in a nuclear environment you know those things raise issues and I think even in outside a nuclear environment no employer should have to accept that as an accommodation that you engage in misconduct but if you can you know show or demonstrate that it was due to a disability that suddenly you're you're off the hook this was all retaliatory he was terminated because he had helped some other employees to file complaints against him and mr. behind and I believe mr. Clark was the ultimate decision-maker we're we're certainly aware that mr. shears had been involved in that investigation along with numerous other supervisors all of whom appear to have retained their employment they were not aware that he was the one that they keep using the term brought the complaints and so you know again mr. shears that I don't believe has that he it's no dispute that he did do that but in terms of the knowledge of the both the investigator and the decision-maker it's not something I think that can raise the inference of retaliation and when we're talking about the retaliatory point the pretext argument is is the same is that even if he had and and that protected activity was well known to both the investigator and the decision-maker the timesheet issue again sort of overcomes that presumption when that burden shifts to the employer to make that showing okay thank you my time is up thank you very much okay thank you just a few points in reply to your discussion with miss out and Alfie the first on the retaliation claim and my general thought about the discussion you had about ability to do the job I think it's important to place the events of this case in the relevant time frame of mr. shears his employment he successfully performed the job for 29 years he engaged in protected activity under title 7 in December of 2018 and four months later five months five months later terminated and it's only in those five months that there's any discussion of any kind of any failing to do any task that he's ever been assigned he's never had a problem with timesheets he's never had a problem with any work related responsibilities he's never had a problem filling out timesheets or filling them out accurately it's only after this moment of protected activity in the in the winter of 2018 and the timing yes the timing was close in time what are the other factors in there that would show us that this was actually a pretextual reason for terminating him well we in the briefing used the same analysis for the retaliation claim that we did under the disability claim arguing that the the that the reasons stated for termination were insufficient to motivate the termination in that others had engaged in the same or similar conduct but not been terminated but who can you point to who had for instance the volume of discrepancies that mr. shears I think the record is the record is silent on that in either direction either either that mr. shears as were larger or smaller that isn't it your burden so that we have to hold that lack of evidence against you only all I all I can do is tell you what I do know is in the record and there is not sufficient evidence as to the volume for me to articulate that specifically but at the time of that termination mr. B hunt testified that at the time his testimony was at the time that the termination occurred he had an understanding that mr. shears is medical condition and working night shift the combination of those two things negatively impacted his health and the the other point I wanted to raise it on that same issue relates to the fact that that that the law of this circuit has been very clear for a long time that plaintiffs have flexibility and how they request accommodation and that that there is no specific requirement of medical documentation but mr. shears did provide what was asked for but I believe that that that what we that but that doesn't speak to the question we talked about earlier about whether a company policy can be to ask for medical documentation because if that's not appropriate then basically what you're telling employers is they have to accept at face value whatever the employee says is the reason why they're seeking an accommodation and unless unless you have cases that say that that seems to be to be going well beyond what our cases say and I'm not saying I'm not going I'm not suggesting that the request by the employer is inappropriate the the federal regulations that interpret the ADA guide the employee and the employer through the process and one in which medical documentation is provided is contemplated so the request for additional information and further conversation is not inappropriate but then having obtained the information as a result of that process confirming mr. shears is medical condition and everything mr. everything mr. shears was asked to provide he did provide had he been asked to provide more I assume he would have provided but he wasn't asked for anything more and then having the benefit of that information the employer at the time of termination was well aware that that this isolated period of where he was working night shift for 24 hours at a time was not an essential function of his job this was an outlying once in a blue moon occurrence that is not something that he typically is asked to do it's not an essential function of the job he had performed the essential functions of his job without accommodation for 29 years and then being put in this situation had problems provided medical information showing that that any errors that occurred were the product of a medical problem that the employer has admitted it could accommodate because it did a comedy and you don't see any disconnect between his position that saying he was absolutely qualified to be performing his job duties during that period whatever they may have been and at the same time saying he had a condition that that excuses false time records I do I do not see any contradiction because what the ADA protects qualified individuals with disabilities and qualified individual with a disability is an employee who can perform the essential functions of his or her job with or without a reasonable accommodation and the accommodation was to work during the day shift and that was available it's undisputed that that was available and it was provided to him and when he works that shift there are no timesheet errors at any time in his 29 year history so I believe statutorily in the definition of the statute he meets that that definition so thank you for your time thank you this is our third and final case thank you for your helpful arguments today